# Jeffries *v.* Castleman.

*Action by Married Woman, for Money Had and Received, belonging to her Statutory Separate Estate.*

1. *Payment and set-off, as defenses to action by wife for money had and received.*—When a married woman sues in an action for money had and received, to recover the proceeds of a check belonging to her statutory estate, placed by her husband in the defendant's hands, and by him collected, the defendant may, under the plea of payment, show that the check was delivered and accepted in payment of an account for goods sold and delivered by him to the husband and wife, although the articles furnished were not of the class for which a liability is imposed by statute on the wife's estate (Code, § 2711); and if the check was not delivered and accepted in payment of the account, he may, under the plea of set-off, make the account available as a defense, to the extent of the

[Jeffries v. Castleman.]

items for which he might charge the wife's estate in a separate action, but no further.

2. *Entry or memorandum on merchant's books; when admissible as evidence.*—A material matter of controversy being as to the terms on which defendant received a check from plaintiff's husband—whether, as plaintiff contended, merely for collection for her; or, as defendant insisted, in payment of an account for goods sold and delivered by him to plaintiff and her husband—a memorandum entered at the time by the defendant on his books, to the effect that the proceeds of the check, when collected, were to be placed to the credit of the husband, is not admissible as evidence for the defendant, when it is not shown that the husband assented to it, or had knowledge of it.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by Mrs. Ann M. Jeffries, the wife of Walter B. Jeffries, against D. J. Castleman, to recover the sum of $701.13, " due by account," as the complaint alleged, "for money had and received by Jeffries & Castleman (a firm composed of A. S. Jeffries and the said D. J. Castleman), belonging to the *corpus* of the statutory separate estate of the said Ann M. Jeffries, and received by the said Jeffries & Castleman on the 18th November, 1872;" and was commenced on the 8th February, 1875. The defendant pleaded the general issue, payment, and set-off, each in short by consent; and also a special plea of set-off (plea No. 4), and a special plea of payment (plea No. 5). On the first trial, there was a verdict for the plaintiff, and judgment thereon; but the judgment was reversed by this court on appeal, and the cause remanded.—*Castleman v. Jeffries*, 60 Ala. 380-93, where the special pleas are set out in full. After the remandment of the cause, as the present record shows, the two special pleas were amended, to conform to the views expressed by this court; and a demurrer to them, as amended, was overruled. The plaintiff then replied the statute of limitations to those pleas, to which the court sustained a demurrer; and thereupon, as the judgment entry recites, "the defendant pleaded the general issue, in short by consent."

The money claimed and sued for was the proceeds of two checks, or drafts, delivered by the plaintiff's husband to said Jeffries & Castleman, and by them collected, with the premium thereon. The checks were drawn by Bush Jones, on Thomas P. Miller & Co., of Mobile, and were payable in gold; one being for $299.58, dated July 25th, 1870, payable to "Walter B. Jeffries or order," and by him indorsed to said Jeffries & Castleman; the other for $294.72, dated August 18th, 1870, payable to "Ann M. Jeffries, the wife of Walter B. Jeffries," and indorsed in blank by said Jeffries and wife. These checks were given for Mrs. Jeffries' share of the purchase-

money received from the sale of a tract of land in Texas, which had belonged to her deceased father, and which was sold by agreement of the several heirs, Bush Jones acting as attorney for Mrs. Jeffries and her husband. The lands were sold in March, 1870. Each of the drafts was received by Jeffries or his wife, on the day after its date ; and each was delivered by Jeffries, a day or two after the receipt, to Jeffries & Castleman, indorsed as above stated. A material matter of controversy, as to which the testimony of the parties was very conflicting, was as to the terms on which the drafts were delivered to Jeffries & Castleman, and by them accepted. The plaintiff herself testified, as a witness in her own behalf, that she placed the drafts in the hands of her husband to be collected for her, and that she never authorized or sanctioned any other use of them, or any other application of the money when collected ; and that she had, on several occasions, demanded the money from Jeffries & Castleman. The plaintiff's husband also testified, as a witness for her, that he received the drafts from her for collection simply, and endeavored to get the money on them from several other persons before he delivered them to Jeffries & Castleman ; that he placed them in their hands simply for collection, they knowing that the money belonged to his wife ; and that he never instructed or authorized them to apply the money, when collected, to the payment of an account which they had against him for goods sold and delivered.

The firm of Jeffries & Castleman were merchants, doing business at Greensboro in said county ; and an account was contracted with them, commencing in January, 1870, and ending with the year 1872, which was charged on their books to W. B. Jeffries, and which the defendant attempted to make available as a defense, under his pleas of payment and set-off. The defendant himself testified, as a witness in his own behalf, that about the first of January, 1870, when the account was commenced, the plaintiff came into the store of Jeffries & Castleman, and said in substance : "*We will have some money coming before long, and we will want to get some goods and groceries ; and when the money comes, it will be deposited in your hands ; and we will want some in money, but not much.*" On the faith of these representations, the witness testified, the account was commenced and continued ; and when the drafts were afterwards brought to the store by plaintiff's husband, witness understood that they were the money referred to by plaintiff, and thus accepted and used them, nothing being said by either party at the time the checks were delivered and accepted. As to plaintiff's sub-

sequent demands for the money, the witness said that, when she asked for money, $5, $10, or $20 was paid her, as shown by the account, and that she never demanded payment of the amount collected on the checks; and he further stated, that he never knew that the money called for by the checks belonged to the plaintiff, until about the commencement of the suit. The witness further testified, that these drafts when received, and the premiums when collected, were credited on the books of Jeffries & Castleman to said Walter B. Jeffries, the plaintiff's husband; and he produced his books, showing an entry in these words: "Bills receivable, Dr. to Walter B. Jeffries, for amount of Bush Jones' check on Thos. P. Miller & Co., for $299.58, payable to W. B. Jeffries' order, in gold, passed to us by him for collection, and to be placed to his credit, with the premium that it may sell for;" the entry as to the other check being in similar words. As to these entries the defendant testified, "that said W. B. Jeffries was near at the time, but he did not know whether Jeffries knew what the entry stated; that the entry was made by his (defendant's) direction, and was in accord with the facts as stated by him." The plaintiff thereupon "objected to the introduction of said books, or any entry therein made by defendant, his agents or clerks, because it was not shown that either plaintiff or her husband was present when the same was made, consenting thereto, and that said books were not competent evidence in this cause. The court overruled the objection, saying that plaintiff's counsel might cross-examine the witness on that subject; to which ruling plaintiff excepted. The witness then stated, that he does not now recollect whether said W. B. Jeffries was present when said entry was made; that Jeffries handed him the drafts at his book-keeper's desk, which is not more than a step from his own desk; and that it was his habit to direct his book-keeper to make his entries as soon as a transaction is had." Plaintiff then again moved to exclude the books and entries as evidence, and excepted to the overruling of the motion.

A. S. Jeffries, the defendant's late partner, testified, as a witness for the defendant, to a conversation between himself and the plaintiff, a few days before the account was opened with Jeffries & Castleman, similar to the conversation to which the defendant had testified; but the plaintiff, in rebuttal, denied each conversation. Of the items included in the account of Jeffries & Castleman, $190 was the aggregate of cash paid at different times to the plaintiff or her husband; and plaintiff consented to the allowance of this amount as a partial payment. Most of the other items, amounting to more than the sum sued for, were, as the defendant testified,

articles for the comfort and support of the household, suitable to the degree and condition in life of the plaintiff and her husband; and there were some items for plantation supplies, tobacco, powder and shot, &c. On all the evidence adduced, which the bill of exceptions purports to set out "in substance," the court charged the jury, on the request of the defendant, as follows: "If the jury believe that, at the time this suit was brought, the plaintiff's husband was indebted to the defendant for articles of family support, suitable to the condition in life of the said W. B. and Ann M. Jeffries; and that such account was contracted for such articles after plaintiff acquired the money sued for; and that such account is still due and unpaid to the defendant; then said account is a good defense under the plea of set-off, whether there was or not any agreement between plaintiff and defendant to so apply the money." To this charge the plaintiff excepted, and she now assigns it as error, with the several rulings on evidence to which exceptions were reserved.

THOS. R. ROULHAC, for appellant.

WEBB & TUTWILER, contra.

STONE, J.—When this case was before us at a former term, we drew a distinction between the defense of payment, and that which could come in in the nature of set-off. As to the former, we said: "It is alleged that, in consideration of 'articles of comfort and support of the household,' &c., furnished and to be furnished by Castleman to Jeffries and wife, Jeffries, the husband and trustee, turned over and paid to Castleman the two checks, which were received and used as so much money. If this be so, and if such articles were furnished in value equal to, or greater than, the sum of the two checks and the premium thereon, then this is a complete defense to the action, and could be given in evidence under the general plea of payment." [This statement of the principle, if sustained by the proof, gives to the plea of payment a much wider range than is covered by the defense of set-off.] "Set-off, being in its nature a cross action, or revocatory suit, must be pleaded with the same formality which would be required in a complaint, if it were made the cause of an action brought." This distinction marks the difference between the two lines of defense. The one would cover all articles previously purchased, without regard to their character. The latter would embrace only such articles of comfort and support of the household as the statute provides for.—See *Castleman v. Jeffries*, 60 Ala. 380.

[Woodruff v. Snedecor.]

There was testimony offered in this case, which is pertinent to each phase of the defense. The testimony pertinent to the plea of payment is in glaring conflict. The verdict of the jury was general, and we can not tell on which issue it was based—whether on the plea of payment, or set-off.

The defendant testified to a state of facts, which, if believed, sustained his plea of payment. He offered in evidence, in corroboration of his own and late partner's testimony probably, the entry he had caused his book-keeper to make on his books, to the effect that the checks were received to be collected and placed, with premium, to Mr. Jeffries' credit. The terms on which these checks were received by Castleman, is the important question of fact which was controverted in the Circuit Court. There were two witnesses, against two. If defendant's version was true, then they were received in payment. If plaintiff's was the true version, then it could be set-off at most. The testimony offered by the defendant, mentioned above, was received by the court, against the objection and exception of the plaintiff. In this, the Circuit Court erred. It was allowing Castleman to prove, in his own favor, a memorandum he had had made, without any testimony tending to show Jeffries assented to it, or knew of its existence.—*Acklen v. Hickman*, 63 Ala. 494. We can not know what influence this testimony exerted in the finding, and hence are not able to affirm it was error without injury.

We find no other error in the record.

Reversed and remanded.